**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**GERALD J. KUMIEGA, JR.,**
                          **Plaintiff,**

v.
                                                                      **19-CV-184-HKS**

**ANDREW SAUL, Acting**
**Commissioner of Social Security,**

                          **Defendant.**

## DECISION AND ORDER

Plaintiff, Gerald J. Kumiega, Jr., brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case by the undersigned pursuant to 28 U.S.C. § 636(c). Dkt. No. 15.

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 10, 13. For the reasons that follow, Defendant's Motion for Judgment on the Pleadings (Dkt. No. 13) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 10) is DENIED.

**BACKGROUND**

On March 3, 2015, Plaintiff protectively filed an application for DIB with the Social Security Administration ("SSA") alleging disability beginning on April 30, 2014, due to: Anxiety; Depression; Panic Attacks; Daily Fatigue; High Blood Pressure; High Cholesterol; and Headaches. Tr.[1] 171-77, 189. On June 8, 2015, Plaintiff's claim was denied by the SSA at the initial level and he requested review. Tr. 74-86. On September 5, 2017, Plaintiff appeared with his attorney and testified, along with a vocational expert ("VE") before Administrative Law Judge, Rosanne Drummer ("the ALJ"). Tr. 43-73. On September 28, 2017, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act. Tr. 12-31. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on December 19, 2018. Tr. 1-6. Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

**LEGAL STANDARD**

I.   **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by

---

[1] References to "Tr." are to the administrative record in this matter. Dkt. No. 8.

substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above.  First, the ALJ found that Plaintiff met the insured status

4

requirements of the Act through December 31, 2020.  Tr. 17.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 3, 2014, the alleged onset date.  *Id.*   At step two, the ALJ found Plaintiff has the following severe impairments:  Mild Degenerative Disc Disease of the Cervical Spine; Depressive Disorder; Anxiety Disorder; and Hypertension.  *Id.*  Also, at step two, the ALJ found Plaintiff suffers from the following non-severe impairments:  History of Migraines; 2011 Hernia Repair Surgery; Cataracts; Gastroesophageal Reflux; Sigmoid Diverticula; and History of Chest Pain (2017).  Tr. 17-18.  At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment.  Tr. 18-19.

       Next, the ALJ determined Plaintiff retained the RFC to perform a range of medium work.[2]  Tr. 19-25. Specifically, Plaintiff could lift/carry fifty pounds occasionally, and twenty-five pounds frequently; sit for six of eight hours; and stand/walk for six hours of an eight-hour workday.  Tr. 19.  The ALJ also concluded that secondary to Plaintiff's mental impairments, he could understand, remember, and carry out instructions for routine, repetitive-type unskilled work.  *Id.*  He could tolerate occasional to rare public contact and should avoid fast-paced or high-production goal work.  *Id.*  Lastly, the ALJ concluded that Plaintiff could adapt to changes in the work setting for routine, repetitive-type unskilled work.  *Id.*

---

[2] "Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

5

At step four, the ALJ found Plaintiff is able to perform his past relevant work as a "Mail Clerk." Tr. 25. At step five the ALJ concluded—based on the VE's testimony in consideration of Plaintiff's age (59 years on alleged disability onset date— an individual of advanced age), education, work experience, and RFC—Plaintiff was also capable of performing other work existing in significant numbers in the national economy. Tr. 26. Specifically, the ALJ found Plaintiff could perform work as a "Laundry Worker," "Janitor," and "Automobile Detailer." *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act from December 3, 2014, through September 28, 2017. Tr. 27.

## II.    Analysis

Plaintiff argues the ALJ erred by failing to properly develop the record and by failing to incorporate limitations on dealing with stress and interacting with supervisors. Dkt. No. 10 at 2. The Commissioner contends the RFC is supported by substantial evidence and should be affirmed. Dkt. No. 13 at 10.

Plaintiff contends that the ALJ failed to develop the record by denying his request to subpoena counseling records from Lakeshore Behavioral Health ("LBH"). Dkt. No. 10 at 8. Plaintiff concedes that the administrative record contains records from LBH of his psychiatric visits with John Napoli, M.D, ("Dr. Napoli"), but argues that his counseling records should also be included as "relevant evidence" regarding his mental impairments. *Id.*

During the administrative hearing on September 5, 2017, Plaintiff testified that he had been going to LBH for the last two years for monthly counseling and treated with psychiatrist Dr. Napoli at LBH every couple of months. Tr. 49-50. Plaintiff's counsel provided the following testimony regarding the outstanding counseling records from LBH:

> "Before I start, I did want to make you aware, I know that 8F is the records from Lakeshore. We tried, very, very hard, we were fighting with them. They don't like to provide—they're very, very—let's see, you know, kind of tight-reigned over what they'll provide and we have specifically asked for his individual, you know, counseling notes, you know, attendance, anything else and they only have a personal policy. They would not provide anything in writing about why, they just say it's a preference, that they don't like to provide more than what they did and the only thing more would have been a duplicate treatment plan. So there is certainly more material or notes and treatment he's getting. They simply would not give it to our office. So I'm—you know, if you have any question or anything you read was a little unclear, you would certainly have to contact them yourself because they've been very limited in what they will provide us. They would not even put it into any kind of specific letter or policy. It's an informal policy they have, so."

Tr. 54-55. The ALJ responded that she would keep counsel's statements under advisement. Tr. 54. After the administrative hearing, Plaintiff's counsel authored a letter to the ALJ, requesting that the ALJ issue a subpoena to secure "relevant outstanding medical evidence" from LBH. Tr. 265.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (internal citation omitted). "This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination," *Pratts v. Chater*, 84 F.3d 34, 37 (2d

7

Cir. 1996), and requires the ALJ to take affirmative steps "where there are deficiencies in the record," *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Lowry v. Astrue*, 474 Fed.Appx. 801,804 (2d Cir. 2012) (quotations and citations omitted).

To assist the ALJ in developing the record, the SSA's regulations authorize the ALJ to issue subpoenas for documents that are "material to an issue at the hearing" when "it is reasonably necessary for the full presentation of a case." 20 C.F.R. §§ 404.950(d), 416.1450(d). The decision of whether to issue a subpoena is within the sound discretion of the ALJ. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). However, this discretion is not unlimited, and the ALJ commits "harmful error" in failing to subpoena medical records that are "reasonably necessary" to the claimant's case. *Outman v. Comm'r of Soc. Sec.*, 2018 WL 3688312, at *2 (W.D.N.Y. 2018) (citations omitted); *see also Sweeney v. Colvin*, 2015 WL 5684024, at *2 (D. Conn. 2015) ("[T]o establish prejudice in an ALJ's failure to subpoena records generally, the plaintiff must show that the records in question would undermine the ALJ's decision.").

In her decision, the ALJ acknowledged that Plaintiff's counsel had informed the ALJ about additional written evidence less than five days before the scheduled hearing date. Tr. 15. Specifically, following the hearing Plaintiff's counsel requested a subpoena for LBH records. *Id.* As an initial matter, this Court notes that

8

Plaintiff's subpoena request was not timely where the written request was issued after the administrative hearing had concluded. "Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the [ALJ] or at one of our offices at least ten business days before the hearing date," and "must inform [the ALJ] about or submit any written evidence, […], no later than five business days before the date of the scheduled hearing." 20 C.F.R. §§ 404.950(d)(2); 404.935(a).

The ALJ further explained that she denied Plaintiff's subpoena request where the record includes psychiatric progress notes from LBH and mental health treatment plan. Tr. 15. Here, the ALJ noted that Plaintiff's treatment plan consisted of conservative cognitive behavioral therapy and referenced LBH records and Plaintiff's own testimony regarding his treatment, in support of her observation. *Id.* Accordingly, the ALJ found that additional records from LBH were not necessary because the record contained sufficient evidence upon which the ALJ based her decision. Here, this Court also notes that Plaintiff's counsel's position during the administrative hearing was, "if you have any question or anything you read was a little unclear, you would certainly have to contact them yourself because they've been very limited in what they will provide us." Tr. 55. This Court finds the ALJ considered Plaintiff's request and reasonably concluded that the LBH records were sufficient. *See Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 33 (2d Cir. 2013). Therefore, the ALJ did not err in her decision to decline to issue a subpoena for additional records from LBH.

Next, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's ability to deal with stress and failed to incorporate limitations on his ability to interact with supervisors in the Mental RFC determination. Dkt. No. 10 at 12-15. Specifically, Plaintiff asserts that the ALJ erred by according "significant weight" to the opinion of consultative psychiatric examiner, Janine Ippolito, Psy.D. ("Dr. Ippolito"), but ignored the doctor's opinion that Plaintiff "can appropriately deal with stress with moderate limitations." *Id.* at 14 (referencing Tr. 297). Plaintiff also asserts that the ALJ erred by according "significant weight" to the opinion of non-examining review physician M. Marks, Psy.D ("Dr. Marks"), but ignored the doctor's opinion that Plaintiff was "moderately limited" in his "ability to accept instructions and respond appropriately to criticism from supervisors." Dkt. No. 10 at 14-15 (referencing Tr. 82). The Commissioner contends the ALJ reasonably accounted for the limitations assessed by both doctors in the Mental RFC. Dkt. No. 13 at 13. This Court agrees for the reasons that follow.

As an initial matter this Court notes that an ALJ's opinion need "not perfectly correspond with any of the opinions of medical sources cited in his decision," the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013) (summary order).

Dr. Ippolito examined Plaintiff in April 2015 and authored the following medical source statement:

10

> "The claimant presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others with no evidence of limitations.  He can appropriate[ly] deal with stress with moderate limitations. These limitations are due to his current emotional distress.  The results of the present evaluation appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis."

Tr. 297.  The ALJ explained that she accorded "significant weight" to Dr. Ippolito's opinion, noting that the doctor observed some limitations correlated with Plaintiff's current emotional distress, but the doctor found Plaintiff had a fair prognosis with continued mental health treatment including therapy and medication management.  Tr. 25.  The ALJ noted Plaintiff received medication management from Dr. Napoli and counseling therapy to enhance his coping skills, per his treatment plan from LBH.  *Id.*

> The ALJ assessed the following limitations in the Plaintiff's Mental RFC:
>
> "Secondary to mental impairments, the claimant could understand, remember, and carry out instructions for routine, repetitive type unskilled work.  He could tolerate occasional to rare public contact.  He should avoid fast pace or high production goal work.  He could adapt to changes in the work setting for routine, repetitive type unskilled work."

Tr. 19.  The Commissioner contends that the ALJ accounted for Plaintiff's ability to handle stress by limiting Plaintiff to routine, repetitive type unskilled work in an environment without fast pace or high production goals and only occasional to rare public contact.  Dkt. No. 13 at 13.  The Commissioner further argues that Plaintiff failed to explain how the limitations the ALJ assessed do not account for Dr. Ippolito's opinion that Plaintiff could appropriately deal with stress with moderate limitations.  Id. at 13-14.

11

This Court agrees and finds the limitations the ALJ assessed in the Mental RFC are supported by substantial evidence. *See Bartell v. Comm'r of Soc. Sec.*, 2014 WL 4966149, at *3 (N.D.N.Y. 2014) (holding the ALJ adequately factored in limitations in maintaining concentration, persistence and pace and difficulties in dealing with stress by limiting the claimant to simple unskilled work).

Next, the ALJ explained that in addition to Dr. Ippolito's opinion, she also considered the available objective record evidence and the opinion of Dr. Marks in support of the Mental RFC. Tr. 25.

Dr. Marks reviewed the administrative record and Dr. Ippolito's opinion and authored a "Mental Residual Functional Capacity Assessment" in June 2015, as part of the SSA's initial review and determination of Plaintiff's DIB claim. Tr. 80. Dr. Marks opined that Plaintiff appears capable of understanding and remembering instructions and procedures, sustaining a routine, and interacting and adapting. Tr. 80. The doctor attached a worksheet containing his specific ratings for Plaintiff's mental functioning in specific areas. Tr. 81-83. In her decision, the ALJ noted that Dr. Marks opined Plaintiff had moderate limitation in various areas of psychological functioning, but that he could understand and remember instructions and procedures, sustain a routine, and interact and adapt in a work setting. *Id.* (referencing Tr. 81-83). The ALJ stated that she incorporated findings from both doctors in the Mental RFC, including that Plaintiff can perform a range of unskilled work, could tolerate limited public contact,

12

should avoid fast paced or high production goal work, due to his depression and anxiety. *Id.*

Here, Plaintiff contends that the ALJ failed to credit or address Dr. Marks' opinion that he would have moderate limitations in his ability to interact with supervisors. Dkt. No. 10 at 14-15. Plaintiff concedes that the ALJ did incorporate limitations on his ability to interact with the public, but failed to address his difficulties in dealing with supervisors. *Id.* at 13 (citing *Smith v. Colvin*, 2017 WL 489701, at *3 (W.D.N.Y 2017) in support of his contention). Plaintiff correctly identifies that the groups of public, supervisors, and co-workers are distinct for purposes of assessing a claimant's capacity to interact with others. *Smith*, 2017 WL 489701, at *3. However, the ALJ was entitled to weigh all of the medical evidence in support of her RFC determination and she accorded "significant weight" to Dr. Ippolito's opinion that Plaintiff could "relate adequately with others with no evidence of limitations." Furthermore, Plaintiff testified that he did not have problems one-on-one with people, but rather when he is around a lot of people. Tr. 54. This evidence, negating any significant limitations in Plaintiff's ability to relate to others, substantially supports the ALJ's RFC assessment of limiting Plaintiff to occasional or rare contact with the public. *See Fuller v. Berryhill*, 2019 WL 421484, at*4 (W.D.N.Y. 2019). Accordingly, this Court finds that the ALJ properly evaluated the medical opinion evidence and her Mental RFC assessment is supported by substantial evidence.

## CONCLUSION

For these reasons, Defendant's Motion for Judgment on the Pleadings (Dkt. No. 13) is GRANTED.  Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 10) is DENIED.  The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         September 28, 2020

*S/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**